[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Presently before the court is the defendant's motion for summary judgment. The plaintiff, Edward Rosenfield, brought this legal malpractice action against the defendant, Rogin, Nassau, Caplan, Lassman Hirtle, L.L.C. (Rogin Nassau), alleging that Rogin Nassau neglected to commence an action on his behalf within the applicable statute of limitations governing torts, General Statutes, § 52-577.[1]
This case is one of a series of legal malpractice actions initially arising out of a foreclosure matter known asRosenfield v. Cymbala, Superior Court, judicial district of Middlesex at Middletown, Docket No. 060180 (December 18, 1992, Higgins, J.), aff'd, 33 Conn. App. 931, 636 A.2d 881 (1994). Rosenfield, the plaintiff therein, was represented by Levy Droney, P.C. (Levy 
Droney). A trial was held before the Court on December 1, 1992. Following the presentation of the evidence on behalf of Rosenfield, the defendant moved for a judgment of dismissal which was granted orally in open court subject to a written memorandum of decision. CT Page 4034 The written decision was issued on December 18, 1992. Levy 
Droney appealed the decision on Rosenfield's behalf. The dismissal was affirmed per curiam by the Appellate Court on February 1, 1994.[2]
Following the decision on the appeal, Rosenfield retained Rogin Nassau to bring a legal malpractice action against Levy Droney. See Rosenfield v. Levy Droney, P.C., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 556791 (April 16, 1997, Wagner, J.) (Rosenfield v. Levy Droney). That lawsuit was commenced by a complaint dated and served upon Levy 
Droney on December 15, 1995.[3] On September 17, 1996, the law firm of Marder Kallet filed an appearance on Rosenfield's behalf in lieu of Rogin Nassau.
On January 17, 1997, through counsel, Levy and Droney filed a motion for summary judgment on the sole ground that the action was time barred. Specifically, Levy Droney argued that the action was commenced beyond the applicable statute of limitations governing torts, General Statutes § 52-577. Levy Droney claimed that in accordance with § 52-577, Rosenfield was required to commence his action by December 1, 1995, the last day within three years of Judge Higgins' oral decision in open court in Rosenfield v. Cymbala, supra, Superior Court, Docket No. 060180. Marder Kallet responded to the motion for summary judgment by claiming that the operative date for statute of limitations purposes was December 18, 1995, three years from the date that Judge Higgins filed his written memorandum of decision. Summary judgment was granted by the court, Wagner, J., on April 16, 1997.[4] See Rosenfield v. Levy Droney. P.C., supra, Superior Court, Docket No. 556791. No appeal was taken from this decision.
The present case is a legal malpractice action arising from Rogin Nassau's representation of Rosenfield in the foregoing legal malpractice claim against Levy Droney. Rosenfield claims herein that Rogin Nassau neglected to commence the legal malpractice action against Levy Droney within the applicable statute of limitations, as determined by Judge Wagner. Rogin Nassau now moves for summary judgment on the ground that notwithstanding Judge Wagner's ruling, the complaint that it initiated on Rosenfield's behalf against Levy Droney was timely. In particular, Rogin Nassau asserts that the statute of limitations for Rosenfield to bring a legal malpractice claim against Levy Droney ran neither on December 1, 1995, nor on CT Page 4035 December 18, 1995. Rather, the three-year limitations period was tolled by Levy Droney's continuous legal representation of Rosenfield until at least the appeal of the first foreclosure was decided on February 1, 1994[5] Accordingly, Rosenfield which was commenced on December 15, 1995, was well within the statute of limitations governing torts, General Statutes § 52-577. Rosenfield opposes Rogin Nassau's motion, in part, on the ground that the court, Wagner, J., already considered any tolling issues in Rosenfield v. Levy Droney, supra, Superior Court, Docket No. 556791, and, therefore, collateral estoppel bars Rogin Nassau from raising the tolling issue in this action. The parties' arguments are discussed more fully below.
 II
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; see also Sherwood v. Danbury Hospital,252 Conn. 193, 201, 746 A.2d 730 (2000).
"A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 378, 260 A.2d 596
(1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) United Oil Co. v.Urban Redevelopment Commission, supra, 158 Conn. 378-79. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together CT Page 4036 with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
 A COLLATERAL ESTOPPEL
Rosenfield claims that the tolling issue raised by Rogin Nassau in support of its summary motion was decided by Judge Wagner inRosenfield v. Levy Droney supra, Superior Court, Docket No. 556791. Rogin Nassau counters that the doctrine of collateral estoppel does not prevent it from raising the tolling issue herein because the doctrine was neither litigated by the parties in the earlier action nor was it the basis of Judge Wagner's decision. Rogin Nassau further asserts that since it was neither a party to Rosenfield v. Levy Droney, nor in privity with a party to the case, it is not precluded by collateral estoppel from raising the tolling issue in this case.
"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (Citations omitted; internal quotation marks omitted.) Walsh v. Stonington Water Pollution Control Authority,250 Conn. 443, 460-61, 736 A.2d 811 (1999); see also Torres v.Waterbury, 249 Conn. 110, 135-36, 733 A.2d 817 (1999) (mutuality requirement is not an ironclad rule).
"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue CT Page 4037 in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; internal quotation marks omitted.) Dowling, Sr. v. Finley Associates,Inc., 248 Conn. 364, 374, 727 A.2d 1245 (1999); see also Walsh v.Stonington Water Pollution Control Authority, supra,250 Conn. 461 ("the issue must have been fully and fairly litigated in the first action").
"To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) Dowling, Sr. v. FinelyAssociates, Inc., supra, 248 Conn. 374. Applying the law to the facts of the present case, the plaintiff has failed to present any evidence that the the continuing course of conduct rule, the continuous legal representation rule or any other tolling issue was in the pleadings or otherwise litigated in Rosenfield v. Levy Droney.
In Rosenfield v. Levy Droney, Levy Droney moved for summary judgment on the sole ground that the action was barred by General Statutes § 52-577 because it was commenced on December 15, 1995, more than three years after Judge Higgins entered his oral judgment of dismissal in Rosenfield v. Cymbala, supra, Superior Court, Docket No. 060180. Through his counsel, Marder Kallet, Rosenfield argued in opposition that the suit was timely filed since the judgment was entered on December 18, 1992, and not on December 1, 1992, the date on which Judge Higgins issued an oral decision from the bench. Judge Wagner ruled in favor of Levy 
Droney on the express ground that judgment was in fact rendered when Judge Higgins officially announced his decision orally in open court. See Rosenfield v. Levy Droney, P.C., supra, Superior Court, Docket No. 556791. There is no evidence in the record indicating that the parties in Rosenfield v. Levy Droney
raised and litigated any tolling issues. Moreover, Rogin Nassau was neither a party nor in privity with a party in that case.
The court rejects Rosenfield's claim that Judge Wagner cited case law regarding the continuous course of conduct doctrine. (See Plaintiff's Memorandum of Law in Opposition, 6/30/99, p. 8.) The court cited Collum v. Chapin, 40 Conn. App. 449, 45 1-52,671 A.2d 1329 (1996) and Fichera v. Mine Hill Corp., 207 Conn. 204,212-213, 541 A.2d 472 (1988), for the proposition that § CT Page 403852-577 provides a three year limitations period for bringing an action in tort which "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." Rosenfield v. Levy Droney. P.C., supra, Superior Court, Docket No. 556791. Bogaert v. Zoning Board of Appeals,162 Conn. 532, 535, 294 A.2d 573 (1972) was cited for the proposition that a judgment is rendered "when the trial judge officially announces his decision orally in open court." Id.
For the foregoing reasons, the court finds that the tolling issue was not raised before Judge Wagner in Rosenfield v. Levy Droney. Rogin Nassau is not precluded, therefore, from raising the issue in the present case.
 B CONTINUING COURSE OF CONDUCT DOCTRINE
Rogin Nassau moves for summary judgment on the ground that it did not commit legal malpractice when, on Rosenfield's behalf, it filed a legal malpractice suit against Levy Droney because Levy Droney's continuous representation of the plaintiff in the underlying foreclosure action and the appeal therefrom tolled the statute of limitations. Specifically, Rogin Nassau argues that the statute of limitations was tolled until at least February 1, 1994, the date on which the Appellate Court sustained the trial court's decision in the initial foreclosure action. SeeRosenfield v. Cymbala, supra, 33 Conn. App. 931. The plaintiff argues in opposition that neither the continuous legal representation rule nor the continuous course of conduct doctrine apply to the facts of the present case.
Actions for legal malpractice based on negligence are subject to the statute of limitations set forth in General Statutes §52-577. See Sanborn v. Greenwald, 39 Conn. App. 289, 301,664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). Section 52-577 provides: "No action founded on a tort shall be brought but within three years from the date of the act or omission complained of." "Section 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs."[6] (Internal quotation marks omitted.) Collum v. Chapin, supra, 40 Conn. App. 451.
"When conducting an analysis under § 52-577, the only facts CT Page 4039 material to the trial court's decision on a motion for summary judgement are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) Id. Judge Wagner determined in Rosenfield v. Levy Droney: (1) the wrongful conduct complained of occurred on December 1, 1992; (2) Rosenfield initiated the legal malpractice action against Levy Droney on December 15, 1995; and (3) "the action [consequently was] barred by the three year statute of limitations set forth in General Statutes § 52-577."Rosenfield v. Levy Droney. P.C., supra, Docket No. 556791.
Nevertheless, "a statute of limitations may be tolled under the . . . continuous course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital,
supra, 252 Conn. 202-03. "The continuous course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Sanborn v Greenwald, supra, 39 Conn. App. 295. Furthermore, the doctrine is consistent with the purposes of the statute of limitations. See Beebe v. East Haddam,48 Conn. App. 60, 67, 78 A.2d 231 (1998).
"The continuous course of conduct doctrine is conspicuously fact-bound." (Internal quotation marks omitted.) Sanborn v.Greenwald, supra, 39 Conn. App. 295. "Elm order [t]o support a finding of a continuous course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [the Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.)Sanborn v. Greenwald, supra, 39 Conn. App. 295.
"[A] precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff." Sherwood v. Danbury Hospital,
supra, 252 Conn. 204. In Rosenfield v. Levy Droney, Rosenfield claimed that Levy Droney "was negligent in not properly CT Page 4040 preparing and/or properly presenting the plaintiffs evidence inRosenfield v. Cymbala, supra, Superior Court, Docket No. 060180]." (See Complaint, ¶ 9, in Rosenfield v. Levy Droney. P.C., supra, Superior Court, Docket No. 556791.)
Although what qualifies as a special relationship is unclear, "it does mean something more than evidence of either a terminated . . . or on-going relationship. " (Internal quotation marks omitted.) Devico v. Vetro, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 059315 (July 9, 1999, Flynn, J.). In Van Deusen v. Dratch, Superior Court, judicial district of Litchfield, Docket No. 069758 (May 7, 1996,Pickett, J.), the court, Pickett, J., defined a special relationship as "[a] fiduciary or confidential relationship . . . characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . ." Clearly, Levy Droney's continuous representation of Rosenfield at trial and on appeal in the initial foreclosure was an ongoing special relationship. See Rosenfield v. Cymbala,
Superior Court, judicial district of Middlesex at Middletown, Docket No. 060180 (December 18, 1992, Higgins, J.), aff'd,33 Conn. App. 931, 636 A.2d 881 (1994).
This court concludes that the continuous course of conduct doctrine is applicable to the circumstances of this case. Therefore, Levy Droney's ongoing fiduciary relationship with Rosenfield after the cessation of the wrong of which Rosenfield complained in Rosenfield v. Levy Droney tolled the statute of limitations until at least February 1, 1994, the date on which the Appellate Court decided the appeal of the initial foreclosure action.[7]
 C CONTINUOUS REPRESENTATION RULE
Even if the continuing course of conduct rule was found to be inapplicable, the continuing representation rule would operate to toll the statute of limitations based on the undisputed history of the legal relationship between Rosenfield and the law firm of Levy Droney. Under the continuous representation rule, the statute of limitations is tolled or the accrual of the cause of action is deferred while the attorney continues to represent the client and the representation relates to the same transaction or CT Page 4041 subject matter as the allegedly negligent acts. See S.M.S.Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan King. P.C., 32 Conn. App. 786, 791, 631 A.2d 340, cert. denied,228 Conn. 903, 634 A.2d 296 (1993); see also 2 R. Mallen J. Smith, Legal Malpractice (4th Ed. 1996) § 21.12, pp. 816-17.
The continuous representation rule is similar to the continuous course of conduct doctrine in that it reflects a policy of "preserving the attorney-client relationship and enabling the attorney to correct, avoid and mitigate the consequences of an apparent error. . . . The application of the rule to specific facts should be based on whether any of these purposes is furthered." 2 R. Mallen J. Smith, p. 815. "Adoption of the rule was a direct reaction to the illogical requirement of the occurrence rule, which compels clients to sue their attorneys although the relationship continues and there has not been and may never be any injury. The rule, limited to the context of continuous representation, also is consistent with the purpose of the statute of limitations, which is to prevent stale claims and enable the defendant to preserve evidence. When the attorney continues to represent the client in the subject matter in which the error occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided." 2 R. Mallen J. Smith, supra, p. 817.
The rule was first discussed in S.M.S. Textile Mills, Inc. v.Brown, Jacobson, Tillinghast, Lahan King, P.C., supra,32 Conn. App. 791. Although the court remained silent on whether Connecticut recognizes the continuous representation rule, it held that the trial court correctly decided that the rule was inapplicable to the circumstances of the case because the complained of negligent acts occurred more than three years before the plaintiff filed his malpractice suit. See id., 792; see also Wirtz v. Field, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 295614 (May 7, 1996, Maiocco,J.) ("a reading of the case, however, indicates that Court did not hold that the continuous representation rule was not applicable to legal malpractice, but rather, determined that the facts in that case did not show a continuing course of conduct").
The continuous representation rule was also discussed inWisniewski v. Brandner, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 018160 (November 24, 1997, Lewis, J.) (20 Conn. L.Rptr. 701). The plaintiffs alleged CT Page 4042 that, contrary to their expressed wishes, their attorney failed to offer the testimony of several witnesses and negligently represented them at trial. The plaintiffs filed their action in April 1994, yet the complained of acts were committed no later than January 10, 1991, the date on which the underlying trial ended. The defendant moved for summary judgment on the sole ground that the plaintiffs claims were time barred by General Statutes § 52-577.
The court, Lewis, J., held that the defendant's continuous representation of the plaintiffs at trial and on appeal tolled the statute of limitations until the appeal was decided on July 20, 1993. Therefore, the plaintiffs action was timely filed. The court reasoned that the defendant's continuous representation of the plaintiff was "evidence of a special relationship between the parties giving rise to such a continuing duty. Blanchette v.Barnett, supra, 229 Conn. 275. The duty owed by the defendant to the plaintiffs, according to Blanchette, remained in existence after commission of the original wrong related thereto. Therefore, the statute of limitations was tolled until the continuing duty owed by the defendant to the plaintiffs ceased to exist." Wisniewski v. Brandner, supra, Superior Court, Docket No. 018160.
For the policy reasons articulated in the foregoing cases, the court finds that Levy Droney's continuous representation of Rosenfield until at least February 1, 1994, tolled Rosenfield's legal malpractice claim against that law firm. Therefore, the action commenced by Rogin Nassau on December 15, 1995, on Rosenfield's behalf, was timely and did not constitute legal malpractice.
 CONCLUSION
Since there are no genuine issues of material fact in dispute and Rogin Nassau is entitled to prevail as a matter of law, the motion for summary judgment is hereby granted.
Peck, J.